IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

JOHN W. SIMS, III,
Defendant.

Case No. 17–CR–40075–JPG–1

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant John W. Sims, III's Motion for Compassionate Release. (ECF No. 116). For the reasons below, the Court **DENIES** Sims's Motion.

### I.   PROCEDURAL & FACTUAL HISTORY

#### A.   The Conviction

In 2017, a federal grand jury in this District indicted Sims for distributing (and conspiring to distribute) methamphetamine. (Indictment 1–2, 5, ECF No. 16). He pleaded guilty less than a year later, (Plea Agreement 1, 11, ECF No. 78); and the Court sentenced him to a 188-month term of imprisonment, (Judgment 2, ECF No. 104). He is currently incarcerated at Federal Correctional Institution ("FCI") Forrest City Low in Arkansas. (Def.'s Mot. for Compassionate Release at 1).

#### B.   The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Sims's background. (PSR 1, ECF No. 100).

According to the PSR, state law-enforcement officers in 2015 discovered that Sims was distributing methamphetamine with his brother and his neighbor. (*Id.* at 5). Sims was "the primary source of the crystal methamphetamine distributed in this case," and "[i]t was reported that [he]

received his supply from someone in Kentucky." (*Id.*). "Between September 2015 and October 2016, authorities utilized three different confidential sources to conduct controlled drug transactions from" Sims and his brother. (*Id.*). Through proffer statements, several individuals "admitted making several purchases of crystal methamphetamine from Sims"; and another "admitted purchasing quantities of marijuana, heroin, ice, and LSD from" Sims and his brother. (*Id.* at 6). The total relevant conduct was over 500 grams of methamphetamine. (*Id.* at 7).

Before committing this offense, Sims pleaded guilty to at least five other crimes from 2005 to 2017. (*Id.* at 9–10). This includes a 2005 conviction for possession with intent to deliver cocaine; a 2006 conviction for unlawful delivery of cocaine within 1,000 feet of a nursing home; and another conviction for unlawful delivery of cocaine in 2012. (*Id.*).

As for his personal life, Sims has five children; and he "reported no significant [health] concerns" other than "high blood pressure," which he did not receive treatment for until he was incarcerated "in the instant offense." (*Id.* at 12–13).

### C. Sims's Motion for Compassionate Release

In 2020, Sims moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—high blood pressure, high cholesterol, anxiety, pre-diabetes, and a family history of heart disease—make him especially vulnerable to the COVID-19 virus. (*Id.* at 1).

The COVID-19 virus, of course, is now a global pandemic. At FCI Forrest City Low, 54 inmates currently have COVID-19; 623 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 20, 2020).[1] In brief, Sims argues that his increased risk of

---

[1] *Available at* https://www.bop.gov/coronavirus.

experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 3).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Sims failed to meet that burden.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

>
> (1) the nature and circumstances of the offense and the history and characteristic of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

      (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

(5) any pertinent policy statement—

      (A)    issued by the Sentencing Commission . . .; and

      (B)    that . . . is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 20, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Sims was convicted of a serious drug offense just three years ago. Worse, this was not the first. At just 39 years old, Sims has spent much of his adult life flouting the law. With each new release comes a new conviction, leaving his five children fatherless. People can change, but Sims presents no plausible argument about why he no longer poses a risk to the community. Upon his release, Sims can turn over a new leaf and become the law-abiding citizen that society expects him to be. Until then, however, just punishment remains necessary to reflect the seriousness of the offense, to promote respect for the law, and to deter further criminal conduct from Sims and others. In short, even given the COVID-19 virus and Sims's increased vulnerability to it, the public has a countervailing interest in his continued incarceration.

### III.   CONCLUSION

The Court **DENIES** Defendant John W. Sims's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Friday, November 20, 2020**

S/J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**

---

[2]   *Available at* https://www.bop.gov/coronavirus/.